IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
**SEP 14 2011**
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

COMMODITY FUTURES TRADING
COMMISSION,

    Plaintiff,

v.

INSTATRADE CORPORATION d/b/a
INSTAFOREX and ZTRADEFX LLC,

    Defendants.

CIVIL ACTION NO. 1:11-cv-00188

**CONSENT ORDER OF PERMANENT INJUNCTION, CIVIL MONETARY PENALTY
AND OTHER EQUITABLE RELIEF AGAINST DEFENDANT INSTATRADE
CORPORATION D/B/A INSTAFOREX**

On January 26, 2011, Plaintiff Commodity Futures Trading Commission (the "Commission" or "Plaintiff") filed a Complaint for Permanent Injunction, Civil Monetary Penalties, and Other Equitable Relief ("Complaint") against Defendant InstaTrade Corporation d/b/a InstaForex ("InstaForex") seeking injunctive and other equitable relief and penalties for violations of the Commodity Exchange Act ("Act"), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. §§ 1 *et seq.*, and Commission Regulations ("Regulations"), 17 C.F.R. §§ 1.1 *et seq.* (2011). On February 21, 2011, the Commission properly served InstaForex with the Complaint and Summons pursuant to Federal Rule of Civil Procedure 4(h)(2) by personally delivering copies of the Summons and Complaint to InstaForex's registered agent in the British Virgin Islands, Shirley Trust Company Limited, in conformity with the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters.

## I. CONSENTS AND AGREEMENTS

To effect settlement of the matters alleged in the Complaint against InstaForex, without a trial on the merits or further judicial proceedings, InstaForex:

1. Consents to the entry of this Consent Order of Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief ("Order").

2. Acknowledges service of the Summons and Complaint.

3. Admits that this Court has jurisdiction over it and the subject matter of this action pursuant to Section 6c(a) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13a-1(a), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

4. Admits that the Commission has jurisdiction over the conduct and transactions at issue in this action pursuant to Section 6c of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13a-1, and Section 2(c)(2) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2).

5. Admits that venue properly lies with this Court pursuant to Section 6c of the Act, as amended by the CRA, to be codified at 7 U.S.C. §13a-1.

6. Affirms that it has agreed to this Order voluntarily, and that no promise or threat has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Order, other than as set forth specifically herein.

7.   Waives:

a.   The entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, except as set forth in Part II of this Order;

b.   Any and all claims that it may possess under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and the rules promulgated by the Commission in conformity therewith, Part 148 of the Commission's Regulations, 17 C.F.R. §§148.1-30 (2011), relating to or arising from this action and any right pursuant to EAJA to seek costs, fees and other expenses relating to or arising from this action;

c.   Any and all claims that it may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-68 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to or arising from this proceeding;

d.   Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Order; and

e.   Any and all rights of appeal from this action.

8.   Agrees that it will not oppose enforcement of the Order on the grounds that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any objections based thereon.

9.   Agrees that neither it nor any of its principals, agents, servants, employees, contractors or attorneys shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or findings or conclusions in this Order or creating, or tending to create, the impression that the Complaint or this Order is without a factual basis;

provided, however, that nothing in this provision shall affect its (a) testimonial obligations or (b) right to take legal positions in other proceedings to which the Commission is not a party. InstaForex shall take all necessary steps to ensure that all of its principals, agents, servants, employees, contractors and attorneys understand and comply with this agreement.

10. Agrees to cooperate with the Commission staff in the continuing litigation of this matter against any defendant not a party to this Order. As part of such cooperation, InstaForex agrees, subject to all applicable privileges, to comply fully, promptly and truthfully with any reasonable inquiries or requests for information or testimony, including but not limited to, testifying at any trial or hearing in this action, or producing written statements or trial declarations to the Commission related to any trial of the subject matter of this proceeding.

11. Neither admits nor denies the allegations contained in the Complaint or the findings of fact or conclusions of law made in this Order, except as to jurisdiction and venue, which it admits. However, InstaForex agrees that the allegations of the Complaint and all of the findings of fact and conclusions of law contained in this Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against it; (b) any proceeding to enforce the terms of this Order; and/or (c) any proceeding pursuant to Section 8a of the Act, to be codified at 7 U.S.C. § 12a(1), and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 *et seq.* (2011). InstaForex shall provide immediate notice to this Court and the Commission by certified mail of any bankruptcy filed by, on behalf of, or against it in the manner required by Part V of this Order.

12. Agrees that no provision of this Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against InstaForex in any other action or processing.

13. Consents to the continued jurisdiction of this Court over it in order to implement and enforce the terms and conditions of this Order and all orders and decrees that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of this Court, and for any other purposes relevant to this action, even if InstaForex now, or in the future, resides outside the jurisdiction.

## II. FINDINGS AND CONCLUSIONS

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Order and that there is no just reason for delay. The Court therefore directs the entry of findings of fact, conclusions of law, and a permanent injunction, orders InstaForex to pay a civil monetary penalty, and orders other equitable relief pursuant to Section 6c of the Act, to be codified at 7 U.S.C. § 13a-1, as set forth herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

### A. Findings of Fact

14. Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with responsibility for administering and enforcing the Act, as amended by the CRA and the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank"), Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010), §§701-774, 124 Stat. 1376 (enacted July 21, 2010), to be codified at 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2011).

15. Defendant InstaTrade Corporation d/b/a InstaForex is a corporation registered and incorporated under the laws of the British Virgin Islands that does business under the name InstaForex and solicits and accepts orders for off-exchange foreign currency ("forex") transactions. InstaForex has never been registered with the Commission in any capacity or applied for registration (or an exemption from registration). InstaForex is not a financial institution, registered broker dealer, insurance companies, financial holding company, investment bank holding company, or an associated person of such entities.

16. From at least October 18, 2010, through the date of filing of this action on January 26, 2011 (the "relevant period"), InstaForex, through its internet website, solicited and continued to solicit orders from non-Eligible Contract Participants ("non-ECPs") in connection with retail forex transactions at a Retail Foreign Exchange Dealer ("RFED"). Further, InstaForex offered to serve or acted as the counterparty to retail forex transactions with non-ECPs in the United States without registering with the Commission.

17. During the relevant period, InstaForex operated a website at instaforex.com and held itself out as a leading Electronic Communication Network broker on the forex market that provides online trading accounts and forex trading platforms, as well as other trading services, to customers.

18. InstaForex maintains a website and trading server in the United States, which during the relevant period was hosted on a computer server located in Dallas, Texas. During the relevant period, InstaForex conducted written and verbal communications with customers, including non-ECP customers in the United States, through its website, email, a U.S. toll free telephone number, and a Skype address.

19.     During the relevant period, the InstaForex advertised and listed an "introducing office" in the United States located in New Canaan, Connecticut, and at ztradefx.com, which are the physical and website addresses of ZtradeFX LLC, an entity that acted as an introducing broker for InstaForex in the United States.

20.     Through its website at instaforex.com, and through its U.S. introducing broker ZtradeFX LLC, InstaForex solicited members of the general public, including customers in the United States who are non-ECPs, to open trading accounts to trade forex at InstaForex.

21.     Customers were directed to open a forex trading account with InstaForex through its website by accepting a "Public Offer Agreement" and completing an online account opening form. Customers were then directed to deposit funds with InstaForex through wire transfer, credit card payment, or by transferring funds to an InstaForex company account with electronic payment system providers such as Webmoney, Liberty Reserve, and Perfect Money.

22.     During the relevant period, InstaForex solicited and accepted funds from customers, including non-ECPs, in the United States. InstaForex solicited or accepted orders from U.S. non-ECPs in connection with margined or leveraged forex transactions at an RFED. The transactions (i.e., the buying and selling of foreign currency pairs) occurred between the non-ECPs and InstaForex. In other words, InstaForex was soliciting and entering into orders with non-ECPs on its own behalf. InstaForex was operating as an RFED.

23.     The forex transactions that InstaForex offered or engaged in did not result in delivery within two days and did not create an enforceable obligation to deliver between a seller and a buyer who have the ability to deliver and accept delivery, respectively, in connection with their lines of business. Rather, these forex contracts remained open from day to day and were

ultimately offset without anyone making or taking delivery of actual currency, or facing an obligation to do so.

**B.  Conclusions of Law**

24. This Court has jurisdiction over this action pursuant to Section 2(c)(2) and Section 6c of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 2(c)(2) and 13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order thereunder.

25. Venue properly lies with the Court pursuant to Section 6c(e) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13a-1(e).

26. The Commission has jurisdiction over InstaForex's forex transactions pursuant to Section 2(c)(2)(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C).

27. Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA, specifically states that:

> A person, unless registered in such capacity as the Commission by rule, regulation, or order shall determine . . . shall not— (aa) solicit or accept orders from any person that is not an eligible contract participant in connection with agreements, contracts, or transactions described in clause (i) of this subparagraph entered into with or to be entered into with a person who is not described in item (aa), (bb), (dd), (ee), or (ff) of subparagraph (B)(i)(II).

28. The transactions referred to include leveraged or margined forex transactions conducted with non-ECPs at a RFED. These transactions do not result in actual delivery of the traded foreign currency within two days or create an enforceable obligation to deliver the foreign currency between a seller and a buyer that have the ability to deliver and accept delivery, respectively, in connection with their lines of business.

29.     An ECP is defined by the Act, in relevant part, as an individual with total assets in excess of (i) $10 million, or (ii) $5 million and who enters the transaction "to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual." *See* Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a.

30.     InstaForex is not one of the persons exempt from registration under Section 2(c)(2)(C) (a financial institution, registered broker or dealer or an associated person thereof, insurance company, financial holding company, or investment bank holding company).

31.     InstaForex violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), by soliciting and accepting orders from non-ECPs in the United States in connection with forex transactions at an RFED without being properly registered with the Commission.

32.     On October 18, 2010, the Commission enacted new regulations implementing certain provisions of the Dodd-Frank Act and the Act, as amended by the CRA, with respect to off-exchange forex transactions.

33.     For the purposes of Part 5 of the Regulations, an RFED is defined in Regulation 5.1(h)(1), 17 C.F.R. § 5.1(h)(1) (2011), as any person that is, or offers to be, the counterparty to a retail forex transaction, except for a person described in sub-paragraph (aa), (bb), (cc)(AA), (dd), (ee), or (ff) of Section 2(c)(2)(B)(i)(II) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(B)(i)(II). InstaForex is not one of the persons excluded from the definition of RFED under Regulation 5.1(h)(1) (a financial institution, registered broker or dealer or an associated person thereof, futures commission merchant, insurance company, financial holding company, or investment bank holding company).

34. Pursuant to Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011), all RFEDs, as defined in Regulation 5.1(h)(1), must be registered with the Commission as of October 18, 2010.

35. During the relevant period, InstaForex acted as a RFED, as defined in Regulation 5.1(h)(1), 17 C.F.R. § 5.1(h)(1) (2011), and because InstaForex failed to register as an RFED, it violated Regulation 5.3(a)(6)(i), 17 C.F.R. §5.3(a)(6)(i) (2011).

### III. ORDER FOR PERMANENT INJUNCTION

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

A. **Prohibition on Violations of Section 2(c)(2)(C)(iii)(I)(aa) of the Act and Regulation 5.3(a)(6)(i)**

36. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13a-1, InstaForex is permanently prohibited, enjoined and restrained from directly or indirectly:

    a. engaging in any conduct in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), including, but not limited to, soliciting or accepting orders from any person that is not an ECP in connection with forex transactions; and

    b. engaging in any conduct in violation of Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011), including, but not limited to, offering to be the counterparty to its customers' forex transactions.

B. **Trading, Solicitation and Registration Prohibitions**

37. InstaForex is permanently prohibited, enjoined and restrained from directly or indirectly:

    a. trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a);

    b. entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2011)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and

        2(c)(2)(C)(i) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts"), for any personal or proprietary account or for any account in which it has a direct or indirect interest;

c.    having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on its behalf;

d.    controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

e.    soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

f.    applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011); and

g.    acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2011)), agent, or any other officer or employee of any person (as that term is defined in Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a) registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011).

## C.    Modifications to Website and Webpages

38.    Within three (3) days of the date of entry of this Order, InstaForex shall cause the following modifications and changes to be made to all Internet websites and webpages owned, maintained, posted or authorized to be posted in which InstaForex solicits or accepts orders or accounts from non-ECPs in connection with forex transactions or offers to be the counterparty to customers' forex transactions, whether through www.instaforex.com, www.instaforexusa.com, the Uniform Resource Locator ("URL") associated with such domain names, and/or any other domain name or URL created, operated, hosted and/or authorized by InstaForex, in whole or in part:

      a.    Publish a prominently displayed notice stating and advising viewers that InstaForex does not accept or provide services for customers residing in any area under the jurisdiction of the United States ("U.S. customers") (the "Website Notification");

      b.    Block or otherwise prevent U.S. customers from accessing or viewing any such website(s) or webpage(s); and

      c.    Block or otherwise prevent U.S. customers from registering for services or opening an account through any such website(s) or webpage(s).

39. InstaForex shall be permanently restrained, enjoined, and prohibited from directly or indirectly contradicting, in any manner whatsoever, the Website Notification.

**D.**    **Liquidation of U.S. Customer Accounts**

40. InstaForex shall proceed to immediately:

      a.    liquidate or cause to be liquidated all open positions in U.S. customer accounts held at InstaForex at closing prices for that day as determined by Bloomberg www.x-rates.com, Currenex or www.oanda.com;

      b.    upon liquidation of all open positions in U.S. customer accounts held at InstaForex, close each U.S. customer account such that no further forex trading can be executed in the U.S. customer account; and

      c.    return to each U.S. customer all funds in the U.S. customer's account; the funds shall be returned to the U.S. customer in the same manner in which the funds were received by InstaForex from the U.S. customer (wire, check, etc.).

      d.    Any funds not returned to U.S customers shall be transferred to an escrow account for the benefit of such U.S. customers.

Failure to follow these procedures will be considered *prima facie* evidence that InstaForex is in contempt of court.

**E.**    **Proof of Compliance with Order**

41. Within thirty (30) days of the issuance of this Order, InstaForex shall deliver to the Commission (care of its counsel) a certification in writing that it has complied with the requirements of Parts III.C. and III.D. above. This certification shall include:

a. a list of all websites and pages modified or removed from the Internet and/or blocked from access by U.S. customers;

b. a list of all accounts, by U.S. customer name, account number and e-mail address, in which InstaForex liquidated open positions, the net realized gain or loss on the liquidated positions and the methodology, as set out in Part III.D above, used to liquidate open positions;

c. a list of all U.S. customers and the amount of money returned to each U.S. customer representing the final balance in the account, as well as a copy of the check, wire transfer confirmation or other means by which the money was returned to each U.S. customer; and

d. a list of all U.S. customers by name, account number and e-mail address, for whose benefit funds have been transferred to an escrow account and the amount of funds being held; and the identity of the escrow account in which the funds are held, including the name and location of the institution, name on the account, and the account number.

### IV.   ORDER OF CIVIL MONETARY PENALTY

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

42. InstaForex shall pay a civil monetary penalty of $140,000, plus post-judgment interest, within ten (10) days of the date of the entry of this Order (the "CMP Obligation"). Should InstaForex not satisfy its CMP Obligation within ten (10) days of the date of entry of this Order, post judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

43. InstaForex shall pay the CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. Unless the payment is made by electronic funds transfer, it shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> Attn: Linda Zurhorst – AMZ 341

DOT/FAA/MMAC
6500 S. MacArthur Blvd.
Oklahoma City, OK 73169
Telephone: (405) 954-5644

If payment is to be made by electronic funds transfer, InstaForex shall contact Linda Zurhorst or her successor at the above address to receive payment instructions and shall fully comply with those instructions. InstaForex shall submit its payment of the CMP Obligation with a cover letter that identifies it and the name and docket number of this proceeding. Copies of the cover letter and the form of payment shall be simultaneously transmitted to the Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581, and to the Chief, Office of Cooperative Enforcement, at the same address.

44. Any acceptance by the Commission of partial payment of InstaForex's CMP Obligation shall not be deemed a waiver of the respective requirement to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

45. InstaForex shall cooperate fully with the Commission and any other government agency seeking to enforce the provisions of this Order by providing any requested information relating to its financial status including, but not limited to, income and earnings, assets, financial statements, asset transfers, tax returns, and assets held by it in foreign countries.

V. MISCELLANEOUS PROVISIONS

46. Continuing Jurisdiction: This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action.

47. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon InstaForex and any person who is acting in the

capacity of officer, agent, employee, servant, or attorney of InstaForex, and any person or entity acting in active concert or participation with InstaForex who receives actual notice of this Order by personal service or otherwise.

48. Notices: All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

Notice to the Commission:

> Attention - Director of Enforcement
> Commodity Futures Trading Commission
> Division of Enforcement
> 1155 21st Street N.W.
> Washington, DC 20581

49. Waiver: The failure of any party to this Order or of any customer or investor at any time to require performance of any provision of this Order shall in no manner affect the right of the party or participant/investor to enforce the same or any other provision of this Order at a later time. No waiver in one or more instances of the breach of any provision contained in this Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Order.

50. Change of Address or Telephone: InstaForex shall provide notice to the Commission by certified mail of any change to its contact telephone number and mailing address within ten (10) calendar days of the change.

51. Invalidation: If any provision or the application of any provision of this Order is held invalid, the remainder of this Order and the application of the provisions to any other person or circumstance shall not be affected by the holding.

52. Entire Agreement and Amendments: This Order incorporates all of the terms and conditions of the settlement among the parties hereto. Nothing shall serve to amend or modify

this Order in any respect whatsoever, unless: (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

53.     Interpretation and Enforcement: This Order shall be interpreted and enforced according to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Columbia, and all provisions of the Act and Commission Regulations, relating or referring to the obligations hereunder.

54.     Counterparts and Facsimile Execution. This Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Order.

55.     Authority: Katerina Pobedinskaya hereby warrants that she is Director of International Affairs of InstaForex, that this Order has been duly authorized and approved by InstaForex, and that she has been duly empowered to agree to, sign and submit this Order on behalf of InstaForex.

56.     This Order shall inure to the benefit of and be binding on InstaForex's successors, assigns, heirs, beneficiaries, and administrators.

The Clerk of the Court is hereby directed to enter this Order.

Approved and So Ordered this 14th day of September 2011.

_____
AMY BERMAN JACKSON
UNITED STATES DISTRICT JUDGE

*Consent Order of Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Defendant InstaTrade Corporation d/b/a InstaForex consented to and approved for entry by:*

_____      Dated: Sept. 8, 2011
Christine M. Ryall / Eugene Smith
Jennifer A. Diamantis
Attorneys for Plaintiff
U.S. Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, N.W.
Washington, DC 20581
(202) 418-5000

_____      Dated: July 12, 2011
InstaTrade Corporation d/b/a InstaForex
By: Katerina Pobedinskaya
    Director of International Affairs